[No. 1262. Decided June 1, 1894.]

ORSON M. SEWARD, *Guardian*, *et al.*, *Appellants*, v. MA-
THIAS SPURGEON *et al.*, *Respondents*.

REFORMATION OF DEED — ACTION FOR — COSTS.

Reformation of a deed will be denied where it is not clearly shown that the parties to the contract intended to convey a particular piece of land other than the one described in the deed.

Where an action for the reformation of a deed is brought without prior demand upon the defendant for a correction, and the defendant has at all times disclaimed title to the disputed parcel, the costs of the action, upon a decree of reformation, should be assessed against the plaintiff.

*Appeal from Superior Court, Clarke County.*

*Mitchell, Tanner & Mitchell*, for appellants.

*Miller & Stapleton*, and *Green & Sparks*, for respondents.

The opinion of the court was delivered by

DUNBAR, C. J.—In November, 1873, Orson M. Seward, one of the appellants in this action, and Mathias Spurgeon, one of the respondents, purchased a portion of a donation land claim of Joseph Petrain, in Clarke county, Washington. They each advanced one-half of the purchase price, with the agreement that the deed should be made to them as tenants in common, each to own an undivided one-half thereof. The deed, however, instead of being made to Seward and Spurgeon jointly, was made out by Petrain in the name of and to Orson M. Seward, by reason of which he took the legal title to the whole of said land. Afterwards they divided the land between them. Appellants contend that the agreement was to divide the land equally, so far as acreage was concerned, but that by reason of a mistake made by the surveyor who surveyed the land at

the time the deed was made, Seward actually deeded to Spurgeon more than one-half of the number of acres of said tract of land; that his deed called for about one hundred and thirty-five acres of land, when in fact one hundred and twenty-one and a half acres was one-half of the whole tract.

At the time the deed was made, a division line between the land of Spurgeon and that of Seward was agreed upon by the parties. Stones and stakes were set to establish it; a fence on said division line was built a portion of the way at least across the land, and said line has ever since been respected by both parties as the true line. Subsequent to this conveyance and the establishment of said line Spurgeon sold and conveyed to the defendants C. E. Wheelock and William Smiley each a portion of said land so conveyed to him, and which reached up to the division line above referred to. In 1881, Nancy E. Seward, wife of said Orson M. Seward and the mother of the other appellants named herein, died intestate, leaving said children her lawful heirs. Her estate was duly administered upon and the land distributed to said children, appellants herein. Afterwards Orson M. Seward deeded to the other appellants all his right, title and interest in and to the excess of land so claimed to be conveyed to said Spurgeon, Orson M. Seward appearing in this action as guardian for some of the minor heirs. A division of the land between the heirs led to the discovery of the alleged mistake in September, 1891, and this action is brought to reform the deed from Seward to Spurgeon, and to establish the boundary line between the original Spurgeon tract and the original Seward tract of land.

The court found, upon the trial of the cause:

1. That Seward and Spurgeon agreed to purchase and hold as tenants in common that certain tract of land described in the complaint.

2. That on or about the first day of November, 1873, purchase was made of said tract; that the deed therefor was made to Orson M. Seward, who took legal title to same and became trustee of said Spurgeon for an undivided one-half thereof.

3. That subsequently Seward and Spurgeon agreed to divide said tract equally between them, and for that purpose the county surveyor established a line within the supervision of Seward and Spurgeon, dividing the tract into two equal parts; that said line then and there established was by Seward and Spurgeon accepted; that Seward had his choice of the two parcels as divided, and selected the south half, and Spurgeon took the north half; that ever since the 6th day of January, 1874, Seward and Spurgeon have continued to occupy, cultivate and improve their respective tracts; that the dividing line between Seward and Spurgeon made an equal and equitable division of said tract; that defendants C. E. Wheelock and William Smiley were innocent purchasers of the tracts which they respectively hold from Mathias Spurgeon, who at the time of their purchase from him held the legal title to said tracts; that the line established and accepted by Seward and Spurgeon at the time of the partition of said tract and observed as such since that time be and continue the boundary line between them, their successors and assigns, said line so established being described in the judgment.

From a perusal of the record we are satisfied that the findings of the court were clearly warranted by the testimony. At the trial appellants introduced County Surveyor Robb, who testified that a certain line indicated by him would be an equal division of the land so far as area or acreage was concerned. While it seems to be true that the deed from Seward to Spurgeon actually calls for a greater number of acres than would be comprehended in one-half of the tract, yet the testimony is conflicting as to whether the agreement was for an equal division of acres, or an equal division so far as value is concerned. It appears from the testimony that the line was actually established, and that Seward had his choice of the tracts that were di-

vided by said line; but conceding that the agreement was that the division should be made with reference to the number of acres, then there is no testimony whatever in this case tending to show that the parties to the contract agreed to divide the land with reference to the particular line established and reported by Surveyor Robb; and if we understand what a reformation of a deed means, it must be shown clearly that the parties to the contract intended to deed a particular piece of land; that the deed actually given did not express the agreement of the parties; and a court of equity will then decree that the instrument shall be reformed to express the actual intention of the parties. But, as we say above, there is no testimony showing that the particular line of division indicated by the surveyor was ever agreed upon by the parties to this contract. While it may be true, and doubtless is, that what is termed the "Robb line" would be an equal division of the tract of land, yet there might be forty lines run across the tract which would equally divide the land, and the court, under the testimony, has no authority to reform the deed upon that basis.

Besides, according to the report of the surveyor, the deed from Seward to Spurgeon absolutely conveyed nothing, the line not being closed so that an intelligent description, or any description at all, was expressed in the deed, and the location of the dividing line at the time and its observance since by both the parties is really all there is to indicate the intention of the parties at the time.

The case in any event would have to fail so far as defendants Wheelock and Smiley are concerned, for the testimony is undisputed that they were innocent purchasers for value without notice, both of them having purchased and paid for the tracts of land in dispute without notice of the alleged mistake.

It is stoutly maintained by the appellants that, inasmuch

as the deed from Seward to Spurgeon calls for land north of the established line between the two respective tracts, or in other words, land which is embraced within what is conceded to be Seward's rightful boundary, in order to protect appellants' title the deed should have been reformed. But conceding that this concession has been made and that the deed from Seward to Spurgeon had actually conveyed such land, the judgment of the court is substantially a reformation of the deed so far as the protection of appellants' title is concerned.

So far as the question of costs is concerned the record shows that no demand was ever made upon respondent Spurgeon for the correction of this deed. He has at all times, at the trial and before, disclaimed any title whatever to any land north of the established line agreed upon between them so long ago. The court found, as we think rightfully, from the testimony, that said established line was the true line, which was all that was contended for by the respondents, and their contention having been fully sustained by the court, we see no reason why they should be put to costs to litigate the wrongful contention of the appellants.

The judgment will, therefore, be affirmed.

SCOTT, HOYT, ANDERS and STILES, JJ., concur.